SLIP OPINION

Cite as 2014 Ark. 429

# SUPREME COURT OF ARKANSAS

No. CV–14–753

| | |
|---|---|
| BRIAN RICHARDSON AND MARY DILLARD, INDIVIDUALLY AND ON BEHALF OF CITIZENS FOR LOCAL RIGHTS<br><br>PETITIONERS<br><br>V.<br><br><br>MARK MARTIN, IN HIS OFFICIAL CAPACITY AS ARKANSAS SECRETARY OF STATE<br>RESPONDENT<br><br>LINDA BOWLIN AND J. ROSS JONES, INDIVIDUALLY AND ON BEHALF OF LET ARKANSAS DECIDE<br><br>INTERVENORS | **Opinion Delivered** October 16, 2014<br><br>ORIGINAL ACTION<br><br><br>PETITION DENIED. |

**KAREN R. BAKER, Associate Justice**

On September 5, 2014, Petitioners, Brian Richardson and Mary Dillard, acting individually and on behalf of the ballot-question committee Citizens for Local Rights ("Richardson") filed this original action challenging the timeliness and sufficiency of an initiative petition for a proposed constitutional amendment with the popular name of "The Arkansas Alcoholic Beverage Amendment" also known as "Issue No. 4" certified by the Respondent, Mark Martin, in his official capacity as Arkansas Secretary of State, for the November 4, 2014 general-election ballot. The intervenors, Linda Bowlin and J. Ross Jones, individually and on behalf of Let Arkansas Decide ("Bowlin") are the members of a ballot-

question committee and the sponsor of the proposed constitutional amendment.

The procedural history of this matter is as follows. On July 7, 2014, pursuant to Amendment 7 of the Arkansas Constitution, Bowlin submitted an initiative petition with Martin to place the measure on the November 4, 2014 general-election ballot. On July 18, 2014, Martin notified Bowlin that the petition did not meet the signature requirement of article 5, § 1 of the Arkansas Constitution, and pursuant to art. 5, § 1, Bowlin was given an additional thirty days for correction or amendment. On August 15, 2014, Bowlin filed additional petitions with signatures and on August 21, 2014, pursuant to Ark. Code Ann. § 7-5-204 (Repl. 2011), Martin certified the amendment as Issue No. 4 to the County Boards of Elections Commissioners. On August 29, 2014, Martin declared that the petition had met the art. 5, § 1 signature requirements to be placed on the November 4, 2014 general-election ballot.

On September 5, 2014, Richardson filed this original action and motions for expedited scheduling order, consecutive briefing, and oral argument. On September 8, 2014, Bowlin filed her motion to intervene. On September 9, 2014, Martin filed his response to the original-action complaint and responses to the motions for expedited scheduling order, expedited briefing, and oral argument. On September 10, 2014, we granted Bowlin's motion to intervene and also granted Richardson's motion for expedited scheduling order, consecutive briefing, and oral argument. Finally, on September 25, 2014, Martin filed a motion to strike the affidavit of J. Kevin Watkins filed by Richardson. On October 2, 2014, we granted Martin's motion to strike the affidavit, and on October 8, 2014, we denied

SLIP OPINION

Richardson's motion for reconsideration striking the affidavit. The parties timely filed simultaneous briefs and replies, and the matter is properly now before this court.

This court has original jurisdiction of this case pursuant to Ark. Sup. Ct. R. 6-5(a) (2014). Rule 6-5(a) provides that this court has original jurisdiction in "extraordinary actions required by law, such as suits attacking the validity of statewide petitions filed under Amendment 7 of the Arkansas Constitution." Amendment 7 to the Constitution is codified in article 5, § 1, of the Arkansas Constitution and is referred to as Amendment 7. Ark. Const. art. 5, § 1, amended by amend. 7.

Richardson presents two issues for review: (1) the timeliness of the petition and (2) the legal sufficiency of the ballot title of "The Arkansas Alcoholic Beverage Amendment."

## I. *Timeliness of the Petition*

The first issue before the court is whether the petition was timely filed. It is undisputed that the petition was filed on July 7, 2014. Richardson asserts that the petition did not meet the timeliness requirements of Amendment 7 because it was not filed within four months of the election, more specifically by July 4, 2014, and therefore the petition was untimely.

We review questions of constitutional construction de novo. *See Wilson v. Weiss*, 370 Ark. 205, 258 S.W.3d 351 (2007). When interpreting the constitution, our task is to read the laws as they are written and interpret them in accordance with established principles of constitutional construction. *Brewer v. Fergus*, 348 Ark. 577, 79 S.W.3d 831 (2002). Language of a constitutional provision that is plain and unambiguous must be given its obvious and

common meaning. *Proctor v. Daniels*, 2010 Ark. 206, 392 S.W.3d 360. Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. *Id.* Further, the Arkansas Constitution must be considered as a whole, and every provision must be read in light of other provisions relating to the same subject matter. *Forrester v. Daniels*, 2010 Ark. 397, 373 S.W.3d 871. Finally, Amendment 7 must be liberally construed in order to effectuate its purposes. *Porter v. McCuen*, 310 Ark. 674, 839 S.W.2d 521 (1992).

With these standards in mind, we turn to the applicable constitutional provisions. Amendment 7 provides in pertinent part:

Amendment 7. Initiative and Referendum

The legislative power of the people of this State shall be vested in a General Assembly, which shall consist of the Senate and House of Representatives, but the people reserve to themselves the power to propose legislative measures, laws and amendments to the Constitution, and to enact or reject the same at the polls independent of the General Assembly; and also reserve the power, at their own option to approve or reject at the polls any entire act or any item of an appropriation bill.

Initiative. The first power reserved by the people is the initiative. . . . *Initiative petitions for state-wide measures shall be filed with the Secretary of State not less than four months before the election at which they are to be voted upon.*

. . . .

Self-Executing. This section shall be self-executing, and all its provisions shall be treated as mandatory, *but laws may be enacted to facilitate its operation.* No legislation shall be enacted to restrict, hamper or impair the exercise of the rights herein reserved to the people.

Enacting Clause. . . . *In submitting measures to the people, the Secretary of State and all other officials shall be guided by the general election laws or municipal laws as the case may be until additional legislation is provided therefor.*

SLIP OPINION

*Id.* (emphasis added).

The plain language of Amendment 7 demonstrates that the petition shall be filed not less than four months before the election, the requirements for filing are mandatory, and laws may be enacted to facilitate the operation of Amendment 7. Further, the plain language of Amendment 7 provides that no legislation shall be enacted to restrict, hamper or impair the exercise of the rights reserved to the people. Finally, the plain language of Amendment 7 provides that the Secretary of State shall be guided by the general-election laws or municipal laws, as the case may be, until additional legislation is provided therefor.

Next, Amendment 51, § 9(*l*), of the Arkansas Constitution instructs that "If an election law deadline occurs on a Saturday, Sunday, or legal holiday, the deadline shall be the next day which is not a Saturday, Sunday, or legal holiday."

Pursuant to Amendment 7, we now turn to the laws that have been enacted to facilitate Amendment 7 and general election laws. First, Ark. Code Ann. § 1-5-101(a)(5)(Repl. 2008) declares July 4th, Independence Day, a state holiday. Second, Ark. Code Ann. § 1-5-102(a) (Supp. 2013) provides in pertinent part:

> (a) All state offices shall be closed on all days declared to be legal holidays under the laws of this state, and all persons employed thereby shall not be required to work on legal holidays.

Third, Ark. Code Ann. § 7-1-108, "Election Law Deadlines" (Repl. 2011), contains the identical language discussed above from Amendment 51, § 9(*l*): "If an election law deadline occurs on a Saturday, Sunday, or legal holiday, the deadline shall be the next day which is not

a Saturday, Sunday, or legal holiday."

In reviewing the plain language of the constitutional provision at issue, and the constitution as a whole, and reading it in the light of other provisions relating to the same subject matter, we may determine what "not less than four months" means pursuant to Amendment 7 by considering Amendment 51 and the statutes enacted to facilitate its operation, including Ark. Code Ann. § 1-5-101(a)(5), Ark. Code Ann. § 1-5-102(a), and Ark. Code Ann. § 7-1-108.[1] *See Forrester*, 2010 Ark. 397, 373 S.W.3d 871. From our review, it is clear that the election deadline at issue occurred on a legal holiday, July 4, 2014. Therefore, the election-law deadline must be the next day which is not a Saturday, Sunday, or legal holiday. Here, the deadline was July 7th, 2014. To compute otherwise would restrict Bowlin's rights which is prohibited by our Constitution. Accordingly, we hold that the petition was timely filed on July 7, 2014.

## II. *Legal Sufficiency of the Ballot Title*

The second issue before the court is whether the ballot title at issue, "The Arkansas Alcoholic Beverage Amendment," is legally sufficient. Richardson asserts that the ballot title fails to convey to the voters an intelligible scope and import of the proposed amendment.

---

[1]While the concurring opinion states that "Ark. Code Ann. § 7-1-108 (Repl. 2011) . . . alone . . . controls, rather than Ark. Const. Amendment 51, § 9(*l*), that pertains to voter registration," we disagree. We have repeatedly held that "the Arkansas Constitution must be considered as a whole, and every provision must be read in light of other provisions relating to the same subject matter." *Forrester*, 2010 Ark. 397, at 7, 373 S.W.3d 871, 875. Here, the plain language of Amendment 51, § 9(*l*) specifically speaks to "election law deadline[s]."

SLIP OPINION

The ballot title is as follows:

<u>Ballot Title</u>

A PROPOSED AMENDMENT TO THE ARKANSAS CONSTITUTION TO PROVIDE THAT, EFFECTIVE JULY 1, 2015, THE MANUFACTURE, SALE, DISTRIBUTION AND TRANSPORTATION OF INTOXICATING LIQUORS IS LAWFUL WITHIN THE ENTIRE GEOGRAPHIC AREA OF EACH AND EVERY COUNTY OF THIS STATE; THAT "INTOXICATING LIQUORS" IS DEFINED FOR PURPOSES OF THE AMENDMENT AS ANY BEVERAGE CONTAINING MORE THAN ONE-HALF OF ONE PERCENT (0.5%) OF ALCOHOL BY WEIGHT; THAT THE MANUFACTURE, SALE, DISTRIBUTION AND TRANSPORTATION OF INTOXICATING LIQUORS MAY BE REGULATED, BUT NOT PROHIBITED, BY THE GENERAL ASSEMBLY; AND THAT ALL LAWS WHICH CONFLICT WITH THE AMENDMENT, INCLUDING LAWS PROVIDING FOR A LOCAL OPTION ELECTION (WET-DRY ELECTION) TO DETERMINE WHETHER INTOXICATING LIQUORS MAY BE SOLD OR NOT SOLD, ARE REPEALED TO THE EXTENT THAT THEY CONFLICT WITH THE AMENDMENT.

With regard to the legal sufficiency of ballot titles, we have explained,

Our decisions upon the sufficiency of ballot titles have been so numerous that the governing principles are perfectly familiar. On the one hand, it is not required that the ballot title contain a synopsis of the amendment or statute. It is sufficient for the title to be complete enough to convey an intelligible idea of the scope and import of the proposed law. We have recognized the impossibility of preparing a ballot title that would suit every one. Yet, on the other hand, the ballot title must be free from any misleading tendency, whether of amplification, of omission, or of fallacy, and it must not be tinged with partisan coloring.

*Bradley v. Hall*, 220 Ark. 925, 927, 251 S.W.2d 470, 471 (1952) (internal citations omitted).

The applicable standard for review of ballot-title cases requires that "[b]allot titles must include an impartial summary of the proposed amendment that will give voters a fair understanding of the issues presented and of the scope and significance of the proposed changes in the law." *Parker v. Priest*, 326 Ark. 123, 129, 930 S.W.2d 322, 325 (1996). The ballot title must be (1) intelligible, (2) honest, and (3) impartial. *Ward v. Priest*, 350 Ark. 345,

SLIP OPINION

359, 86 S.W.3d 884, 891 (2002). "However, this court is neither to interpret a proposed amendment nor discuss its merits or faults." *Id.* at 359, 86 S.W.3d at 891 (internal citations omitted). The ballot title is sufficient if it "informs the voters with such clarity that they can cast their ballot with a fair understanding of the issue presented." *Ferstl v. McCuen*, 296 Ark. 504, 509, 758 S.W.2d 398, 400 (1988) (internal citations omitted).

In addition, when reviewing a challenge to the ballot title, the court recognizes that Amendment 7 of article 5, § 1 "places the burden upon the party challenging the ballot title to prove that it is misleading or insufficient." *Cox v. Daniels*, 374 Ark. 437, 444, 288 S.W.3d 591, 595(2008) (internal citations omitted). Finally, we liberally construe Amendment 7 in determining the sufficiency of ballot titles. *Becker v. Riviere*, 270 Ark. 219, 604 S.W.2d 555 (1980).

Applying these standards, we will review Richardson's two challenges to the ballot title.

A. Liquor Stores Located Within 1,000 Feet of Schools or Churches

First, Richardson asserts that the ballot title is insufficient and misleading because the voters will not understand the impact of the amendment on the legality of liquor stores being located within 1,000 feet of any church or school. Richardson contends that the title fails to make clear to voters that the statutory prohibition on new liquor stores being located near churches or schools will be abolished, specifically Arkansas Code Annotated § 3-4-206(b) (Repl. 2008). Further, Richardson asserts that the disclosure in the ballot title, "will repeal

inconsistent laws," focuses on repealing wet-dry election laws and directs the voters' attention away from the subject singling out the wet-dry election. In sum, Richardson asserts that the ballot title is legally insufficient because voters will not understand that the prohibition on new liquor stores located within 1,000 feet of a school or a church will be repealed and location alone will never be sufficient to prevent a liquor store from being opened near a church or school.

The language of the ballot title states: "ALL LAWS WHICH CONFLICT WITH THE AMENDMENT, INCLUDING LAWS PROVIDING FOR A LOCAL OPTION ELECTION (WET-DRY ELECTION) TO DETERMINE WHETHER INTOXICATING LIQUORS MAY BE SOLD OR NOT SOLD, ARE REPEALED TO THE EXTENT THAT THEY CONFLICT WITH THE AMENDMENT." Here, after reviewing the ballot title, we conclude that it informs the voters in an intelligible, honest, and impartial manner that all laws which are in conflict will be repealed. This court has held that it is not necessary that a ballot title include every possible consequence or impact of a proposed measure. In *Ferstl*, this court stated unequivocally: "Certainly not every detail of an amendment or how it will work in every situation can be revealed in the name and title. It is not possible to do so." 296 Ark. 504, 510, 758 S.W.2d 398, 401; *see also Cox v. Martin*, 2012 Ark. 352, 423 S.W.3d 75.

With regard to location of where liquor may be sold, the ballot title states: "THE MANUFACTURE, SALE, DISTRIBUTION AND TRANSPORTATION OF INTOXICATING LIQUORS IS LAWFUL WITHIN THE ENTIRE GEOGRAPHIC AREA OF EACH AND EVERY COUNTY OF THIS

STATE." Here, the ballot title clearly instructs the voter on the location where the alcohol can be sold: each and every county of the state of Arkansas. We hold that the ballot title is sufficient under our law.

Finally, we note that the parties take issue with whether the existing laws regarding the distance liquor may be sold from schools and churches are "regulations" or "prohibitions" because the amendment will allow the General Assembly to regulate but not prohibit. We need not address this argument because it does not address the sufficiency of the title of the ballot before us; rather, it is directed at the implementation. *See Ferstl*, 296 Ark. at 510, 758 S.W.2d at 401 ("It is not our function in the present litigation to interpret the amendment or explain how it is to be implemented. Neither is it our purpose in this opinion to discuss the proposal's merits or its faults. It is rather our function to see that the popular name and ballot title are a fair and honest means of presenting this measure to the people for their consideration. We must simply determine whether the sponsors of the proposed amendment have complied with the law, and whether the popular name and ballot title fairly represent the issue which will be presented to the electors.").

B. The Voters Will Not Understand that They Will Lose Their Right
to Vote On Whether to Allow the On-Premises Consumption of Mixed Drinks

Richardson also contends that the ballot title at issue is legally insufficient because it fails to inform the voters that the right to a referendum election on the sale of mixed drinks will be lost if the amendment is adopted. Richardson asserts that currently, a business located in a wet county cannot necessarily sell mixed drinks. Rather, pursuant to Ark. Code Ann.

§§ 3-9-203 and 221 (Supp. 2013), he contends that a separate referendum election is required in order to approve on-premises consumption. Therefore, Richardson asserts that the failure to inform the voters of this specific issue renders the ballot title legally insufficient.

Here, the ballot title states:

[T]HAT "INTOXICATING LIQUORS" IS DEFINED FOR PURPOSES OF THE AMENDMENT AS ANY BEVERAGE CONTAINING MORE THAN ONE-HALF OF ONE PERCENT (0.5%) OF ALCOHOL BY WEIGHT; THAT THE MANUFACTURE, SALE, DISTRIBUTION AND TRANSPORTATION OF INTOXICATING LIQUORS MAY BE REGULATED, BUT NOT PROHIBITED, BY THE GENERAL ASSEMBLY; AND THAT ALL LAWS WHICH CONFLICT WITH THE AMENDMENT, INCLUDING LAWS PROVIDING FOR A LOCAL OPTION ELECTION (WET-DRY ELECTION) TO DETERMINE WHETHER INTOXICATING LIQUORS MAY BE SOLD OR NOT SOLD, ARE REPEALED TO THE EXTENT THAT THEY CONFLICT WITH THE AMENDMENT.

Again, the title need not include every detail from the Act. In *May v. Daniels*, 359 Ark. 100, 111, 194 S.W.3d 771, 780 (2004), we held that "it is not necessary that a ballot title include every possible consequence or impact of a proposed measure." "Certainly not every detail of an amendment or how it will work in every situation can be revealed in the name and title. It is not possible to do so." *Ferstl*, 296 Ark. at 510, 758 S.W.2d at 401. More recently, this court has reiterated: "The [ballot] title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke." *May*, 359 Ark. at 111, 194 S.W.3d at 780 (internal citations omitted). Here, the ballot title gives the voter a fair understanding of intoxicating liquors and specifically defines the intoxicating liquors in a manner that is clear to encompass mixed drinks. Further, the amendment makes clear to voters that alcohol may be sold anywhere in the State, laws

in conflict are repealed, and regulations by the General Assembly are permitted. Thus, Richardson has not met his burden of proving that the ballot title is insufficient.

We conclude that while inside the voting booth, the voters will be able to reach an intelligent and informed decision for or against "The Arkansas Alcoholic Beverage Amendment" and understand the consequences of his or her vote based on the ballot title. *Kurrus v. Priest*, 342 Ark. 434, 29 S.W.3d 669 (2000).

The mandate herein will issue immediately. No petition for rehearing will be entertained by the court.

Petition denied.

CORBIN and DANIELSON, JJ., concur.

**PAUL E. DANIELSON, Justice, concurring.** I concur with the majority's denial of the instant petition. I do so, however, because my denial is based solely on the plain language of article 5, section 1, as amended by Amendment 7, which provides that "laws may be enacted to facilitate its operation." Ark. Const. art. 5, § 1. The provisions for initiated acts are part and parcel of Title 7 of the Arkansas Code Annotated, our Election Code. *See* Ark. Code Ann. §§ 7-9-101 to -126 (Repl. 2011 & Supp. 2013). Within that Title are general provisions for elections, including Ark. Code Ann. § 7-1-108, which states that "[i]f an election law deadline occurs on a Saturday, Sunday, or legal holiday, the deadline shall be the next day which is not a Saturday, Sunday, or legal holiday." Ark. Code Ann. § 7-1-108 (Repl. 2011). I believe it is this section alone that controls, rather than Ark. Const.

12

Amendment 51, § 9(*l*), that pertains to voter registration, and it is clear to me that this section facilitates the operation of article 5, section 1, as amended by Amendment 7. Because I believe that this section governs and permits the filing of the initiative petition on July 7, I too deny the original-action petition and respectfully concur.

CORBIN, J., joins.

*Law Offices of Shirley Jones*, by: *Shirley Jones*; *Stephen Engstrom Law Office*, by: *Stephen Engstrom*; and *Friday, Eldredge & Clark, LLP*, by: *Elizabeth Robben Murray*, *Robert S. Shafer*, and *John F. Griffee IV*, for petitioners.

*Martha Adcock*, General Counsel, Arkansas Secretary of State, and *L. Justin Tate*, Associate General Counsel, for respondent.

*David A. Couch, PLLC*, by: *David A. Couch*, for intevenors.